<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DEREK JASON LECOMPTE, | : | |
| Plaintiff, | : | Civil No. 11-1639 (JAP) |
| v. | : | |
| MICHELLE R. RICCI, et al., | : | **OPINION** |
| Defendants. | : | |

**APPEARANCES:**

> DEREK JASON LECOMPTE, Plaintiff <u>pro se</u>
> # 408977-985074B
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625-0861

**PISANO**, District Judge

Plaintiff, Derek Jason LeCompte, a state inmate confined at the New Jersey State Prison in Trenton, New Jersey, at the time he submitted the above-captioned Complaint for filing, seeks to bring this action <u>in forma pauperis</u>. Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint. Plaintiff later filed an Amended Complaint, on or about May 16, 2011, with a request for appointment of counsel. (Docket entry no. 2)

At this time, this Court must review the Complaint and Amended Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether the pleadings should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because they seek monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that Plaintiff's claims should be dismissed.

## I.  BACKGROUND

Plaintiff, Derek Jason LeCompte ("Plaintiff" or "LeCompte"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Michelle R. Ricci, Administrator at the New Jersey State Prison ("NJSP"); Investigator Raphael Dolce, Special Investigations Division ("SID"); Salvatore Maniscalco, Court-Line Officer at NJSP; Greg Bartkowski, former Administrator of NJSP; Charles Warren, Jr., current Administrator of NJSP; and the New Jersey Department of Corrections ("NJDOC").  (Complaint, Caption and ¶¶ 4b-f).  The following factual allegations are taken from the Complaint and Amended Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Plaintiff alleges that, sometime before 2006, he and a few other inmates decided to assist family members to start their own Islamic non-profit organization named "Baseemah's Ray of Hope, Inc."  (Complaint, ¶ 6).  The organization was intended to assist

at-risk women and at-risk incarcerated women. Plaintiff helped draft the by-laws and signed them as secretary of the organization. Plaintiff's mother incorporated the organization, applied for her Federal Employer Identification Number and planned on registering the organization with the Charities Registration Bureau. Plaintiff began to study how to write proposals and templates for his mother. (Id.).

In August 2006, a firearm was discovered within the security perimeter of NJSP, and in response, a lockdown ensued and NJSP officers conducted searches of inmate cells. SID officers found paperwork regarding the non-profit organization and defendant Dolce issued Plaintiff two institutional infractions, .705 and .706. Plaintiff was placed in pre-hearing detention and another infraction, .704, was issued against Plaintiff a few days later. At the same time, defendant Ricci temporarily banned Plaintiff's mother from all visitation. (Id.).

With his Amended Complaint, Plaintiff attaches the institutional documents representing the disciplinary charges, and the adjudication of the disciplinary charges. It appears that Plaintiff was charged with violating .704, .705 and .706, but only .704 (perpetrating a fraud) was adjudicated. In a memo to the Institutional Hearing Officer from Investigator Dolce, dated September 12, 2006, Dolce recites his investigation of the fraud charges as follows:

> Through the course of an investigation, information was developed that indicated that several inmates who are or

were housed in the recent past at New Jersey State Prison (NJSP) initiated a business operation.  The investigation led to the discovery of a large cache of documents in the property of inmate LeCompte.  These documents indicated that a business identified as Baseemah's Ray of Hope Incorporated had been established without the approval of the administration of NJSP. The documents also showed that each of the inmates identified had corresponding civilians visitors/family members identified as 'officers' within the corporation.  Further, the inmates in concert with their civilian counterparts had filed paperwork with both the State of New Jersey as well as the United States government to receive tax exempt status as well as copyright protections for the corporation.

The inmates involved had also provided fraudulent information through the filing of the tax documents as they represented that they could be contacted through a post office box in Trenton.  This act was designed to conceal the fact that these 'principals' were incarcerated.  The inmates additionally authored correspondence soliciting funding and represented that they had facilities and staff to initiate this venture.

Through the course of interviewing inmate Harris as he was listed as the CEO of this corporation, it was determined that the inmates involved had initiated the plan with the full intention that they would be compensated for their 'work.'  This was to occur through the creation of dedicated bank accounts where by their civilian counterpart would actually receive the compensation.  These funds would then be laundered and placed into dedicated accounts for use by the individual inmates.

(Amended Compl., Exhibit E, Docket entry no. 2-1).  A copy of a Disciplinary Report, dated September 11, 2006, by Dolce, was delivered to Plaintiff on September 12, 2006.  (Id., Ex. C). The Disciplinary Report described the infraction as follows: "An investigation has determined that I/M LeCompte has engaged in a pattern of fraud in concert with other inmates at NJSP. Specifically, this inmate along with his mother did cause a business to be incorporated with the State and Federal

government.  This business would solicit funds that would be laundered through family members and ultimately placed into an account for use by the inmate." (Id.).

The NJDOC form E. Adjudication of Disciplinary Charge also was attached to the Amended Complaint.  (Id., Ex. D).  The report shows that a hearing date of September 12, 2006 was postponed to allow Plaintiff to review the charges and non-confidential evidence against him.  The evidence included incorporation documents, charitable registration forms, tax forms, development plan, copyright work, employee contracts, solicitation letters, the organizational by-laws, post office box application, proposals, memos, power-of-attorney forms, and website information that had been seized from Plaintiff's cell during the aforementioned cell search, as well as the inmate statement from inmate Harris.  The hearing was rescheduled and held on September 15, 2006.  (Id.).

At the September 15, 2006 hearing, Plaintiff stated that the organization was not intended to solicit money for his mother's non-profit, legal organization.  Inmate Harris also testified that the business was started to help a female friend. Plaintiff's inmate counsel substitute Burton requested a hearing if Plaintiff was found guilty.  (Id.).  At the conclusion of the hearing, the Disciplinary Hearing Officer ("DHO") found that Plaintiff was guilty, and gave a summary of evidence relied upon to reach his decision, as follows:

HO relies on report from Inv. Dolce stating that during the
search of the property belonging to inmate LeCompte he
discovered several documents that reveals that inmate
LeCompte, Harris, Crumbley and Cooper had formed and
maintained a corporation named "Baseemah's Ray of Hope"
without the authorization of the administration of NJSP.  HO
also notes a-1, Inv. Dolce, stating that an investigation
revealed that the inmates had conspired along with civilian
counterparts to provide false and misleading information to
various State and Federal agencies while attempting to
obtain "non profit" status.  The inmate involved provided a
PO box (# 5921) in Trenton, NJ in an attempt to conceal that
they were incarcerated at the time.  HO notes a-1 through a-
24, documents seized, providing numerous communications with
each other as well as State and Federal agencies using the
PO Box at the contact locale.  Additionally, the
documentation designates that salary of staff employed as
well as the establishment of pof bank accounts for the use
of those individuals listed as officers of the corporation
including inmate [LeCompte], Harris and Crumbley.  The
inmate argued that the corporation was operated by his
mother, however, as described in a-11 (page 4) [inmate
LeCompte] is listed as a board member.  Additionally,
contained in a-15 [inmate] LeCompte is listed as an
executive board member of that corporation.

It is also noted that in a-11 (tax forms) inmate LeCompte is
listed as a board member.  Therefore, based on the evidence
presented it is reasonable to conclude that inmate LeCompte
conspired with other inmates as well as civilian
counterparts to establish a business and provide false
information to government agencies to conceal that they were
incarcerated at the time.

(Id., Ex. D).  Plaintiff was sanctioned to "15 days detention

CTS, 365 days ad/seg refer to CC, 365 LOCT refer to Supt.

Confiscation."  (Id., Ex. D at ¶ 19).

Plaintiff disputes the disciplinary reports and findings.

He also alleges that he never met with his inmate paralegal

before the hearing, and that they only had five minutes to review

the documents taken from his cell.  He further claims that he was

removed from the hearing after he asked to call his mother as a

witness to confront Dolce.  Plaintiff alleges that his inmate paralegal signed the adjudication form without Plaintiff's knowledge or authorization.  In addition, the inmate paralegal did not notify Plaintiff about the sanctions until six days later, and Plaintiff had to have someone else file his administrative appeal.  (Amended Compl., ¶ 6 at pg. 6).

Plaintiff alleges that he appealed all of the administrative decisions, and that they were perfunctorily denied without further hearings or fact findings.  (Id.).

Plaintiff asserts the following claims: (1) that defendant Dolce violated Plaintiff's First Amendment right "by using my religion of Islam as a negative act to allege a fraud that he cannot prove I had involvement in, and using a legitimate religious non-profit organization which is protected by the R.L.U.I.P.A. being it complies with my religious right to help in a cause which is charitable (Zakat), and since not based inside the facility, prior approval is not required nor does it violate any security perimeters"; (2) that defendant Maniscalco deprived Plaintiff of his due process rights under the Fourteenth Amendment by not giving Plaintiff ample time to spend with his inmate counsel substitute before the hearing, by not allowing Plaintiff to call his mother as a witness to confront Dolce, and by allowing the counsel substitute to sign the adjudication form without Plaintiff's authorization; (3) that Maniscalco violated Plaintiff's rights under the First, Fifth, Eighth and Fourteenth

Amendments by relying solely on Dolce's opinion rather than the evidence itself; (4) that defendant Ricci violated Plaintiff's rights under the First, Fifth, Eighth and Fourteenth Amendments by perfunctorily denying Plaintiff's appeal from the DHO decision without conducting an independent investigation, and by enacting a "permanent" visitation ban on Plaintiff's mother; (5) that Dolce violated Plaintiff's Fifth and Fourteenth Amendment rights by not interviewing Plaintiff in Dolce's investigation of the charges, and by verbally harassing Plaintiff's mother in an interview, which caused her to walk out of the interview; (6) that defendant Warren violated Plaintiff's rights under the First, Eighth and Fourteenth Amendments by perfunctorily denying Plaintiff's letter of appeal from the visitation ban against Plaintiff's mother without proof of her involvement; (7) that Bartkowski violated Plaintiff's rights under the First, Eighth and Fourteenth Amendments by upholding the visitation ban against Plaintiff's mother after the matter was remanded; and (8) that the NJSP Administration violated Plaintiff's rights under the First, Fifth, Eighth and Fourteenth Amendments and the provisions of R.L.I.U.P.A. by adjudicating a legitimate Islamic non-profit organization as a fraud based on allegedly "specious" allegations.  (Amended Compl., pp. 10-11).

Plaintiff seeks an adjudication of his innocence with regard to the fraud disciplinary charge and asks that his prison record in this regard be expunged.  He also seeks to have his mother's

8

visitation privileges reinstated.  Finally, he seeks compensatory and punitive damages in excess of $100,000.00.  (Amended Compl., ¶ 7, pp. 8-9).

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to <u>sua sponte</u> screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>See Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007)(following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)).  <u>See also United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower</u>

9

<u>Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  <u>See</u> <u>also</u> <u>Erickson</u>, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  <u>Id</u>.  The Court examined Rule

8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1] Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

> conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]   In

other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  <u>Iqbal</u>, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>.

<u>Fowler</u>, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this <u>pro</u> <u>se</u> pleading must be construed liberally in favor of Plaintiff, even after <u>Iqbal</u>.  See <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 110-111 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 117 (3d Cir. 2000).

### III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

Here, Plaintiff names the NJDOC as a defendant in this

matter.  However, the NJDOC must be dismissed from this action

pursuant to the Eleventh Amendment.  The Eleventh Amendment to

the United States Constitution provides that, "The Judicial power

of the United States shall not be construed to extend to any suit

in law or equity, commenced or prosecuted against one of the

United States by citizens of another State, or by Citizens or

Subjects of any Foreign State."  As a general proposition, a suit

by private parties seeking to impose a liability which must be

paid from public funds in a state treasury is barred from federal

14

court by the Eleventh Amendment, unless Eleventh Amendment
immunity is waived by the state itself or by federal statute.
See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The
Eleventh Amendment protects states and their agencies and
departments from suit in federal court regardless of the type of
relief sought.  Pennhurst State School and Hospital v. Halderman,
465 U.S. 89, 100 (1984).  Similarly, absent consent by a state,
the Eleventh Amendment bars federal court suits for money damages
against state officers in their official capacities.  See
Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does
not override a state's Eleventh Amendment immunity.  Quern v.
Jordan, 440 U.S. 332 (1979).

Additionally, the NJDOC and the NJSP must be dismissed from
this lawsuit because they are not a "persons" subject to
liability under § 1983.  See Grabow v. Southern State
Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J.
1989)(correctional facility is not a person under § 1983).;
Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274
(D.C. Pa. 1976).

### IV.  ANALYSIS

A.  First Amendment and RLUIPA Claims

Plaintiff generally alleges that defendants violated his
First Amendment rights and his rights under the Religious Land
Use and Institutionalized Persons Act ("RLUIPA"), by punishing

15

him for his limited involvement with an Islamic non-profit organization, and by banning visitation with his mother.

    1.  *Religious Exercise Claim*

    The First Amendment, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  Here, Plaintiff appears to claim that the disciplinary charge of fraud and resulting sanctions violate his right to free exercise of religion.

    To establish a denial of religious freedom claim in this instance, Plaintiff must demonstrate that the restriction on religious practice was not reasonably related to a legitimate, penological interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987).  This reasonableness standard involves the examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other

16

prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.

In this case, Plaintiff's bare allegations are not sufficient to state a First Amendment free exercise claim.  He fails to allege that he was restricted from participation in a legitimate religious practice or from practicing his faith. Rather, his allegations pertain to a non-profit organization, which he inconsistently claims he was involved in for purposes of this claim but was not involved in for purposes of denying the charges against him.  Additionally, Plaintiff baldly alleges, without any factual support, that defendants used the Islamic religion as a negative act to allege a fraud by Plaintiff.  Such bare allegations must be dismissed because they are no more than threadbare legal conclusions not entitled to the assumption of truth.  Iqbal, 129 S.Ct. at 1949-50.  Therefore, this bald allegation of a First Amendment violation regarding free exercise of religion does not rise to the level of a violation of constitutional dimension, and the claim will be dismissed with prejudice accordingly for failure to state a claim upon which relief may be granted.

2.  *RLUIPA Claim*

Next, Plaintiff asserts that defendants' actions in punishing him with regard to an allegedly legitimate Islamic non-

17

profit organization violates the provisions of RLUIPA.  RLUIPA governs the religious rights of incarcerated individuals at federally funded prisons.  RLUIPA bars federally funded prisons from "impos[ing] a substantial burden on the religious exercise of a person ... unless the government demonstrates that imposition of the burden on that person ... (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling interest."  42 U.S.C. § 2000cc-1(a).  To state a claim under RLUIPA, a prisoner must establish that his religious exercise has been "substantially burdened."  Once a claimant satisfies this element, the burden shifts to the government to show that the burden on the prisoner's religious exercise furthers a "compelling governmental interest" and "is the least restrictive means of achieving that interest."  Washington v. Klem, 497 F.3d 272, 277 (3d Cir. 2007).

     In order to be considered a "substantial burden", the plaintiff must demonstrate that the government's action pressured him to commit an act forbidden by his religion or prevented him from engaging in conduct or having a religious experience mandated by his faith.  Muhammed v. City of New York Dep't of Corrections, 904 F. Supp. 161, 188 (S.D.N.Y. 1995)(citations omitted).  The burden must be more than an inconvenience; it must be substantially interfere with a tenet or belief that is central to the religious doctrine.  Id. (citations omitted); see also

18

Jones v. Shabazz, 2009 WL 3682569, at *2 (5th Cir. 2009)(holding that a government action or regulation only creates a "substantial burden" on a religious exercise if it truly pressures an adherent to significantly modify his religious behavior and significantly violate his religious beliefs).

Here, the Complaint fails to allege sufficient facts to support a claim that defendants' actions substantially burdened his Islamic religious practices.  Plaintiff's allegations that defendants used his Islamic religion in a negative way to allege a fraud against him are simply conclusory and unsupported by specific facts.  Therefore, the Court finds that the allegations of the Complaint are inadequate to state a claim for relief under RLUIPA that is plausible on its face, and his claim will be dismissed with prejudice.

    3.  *Visitation Claim*

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.  Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication).  See also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison

inmates).  Cf., Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (there is no substantive due process right to "unfettered visitation");  Neumeyer v. Beard, 301 F. Supp.2d 349, 351 (M.D. Pa. 2004), aff'd, 421 F.3d 210 (3d Cir. 2005) (convicted prisoners and their families and spouses have no "absolute constitutional right to visitation" other than with legal counsel); Young v. Vaughn, No. CIV. A. 98-4630, 2000 WL 1056444 (E.D. Pa. Aug. 1, 2000); Flanagan v. Shively, 783 F. Supp. 922, 934 (M.D. Pa. 1992)("Inmates have no constitutional right to visitation.  Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion"), aff'd, 980 F.2d 722 (3d Cir. 1992), cert. denied, 510 U.S. 829 (1993).

     Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls." Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa.) (citation omitted).  Moreover, free citizens possess a coextensive First Amendment right to reach out to those who are incarcerated.  Thornburgh, 490 U.S. at 410 n. 9; Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999). However, the institution may place limits on visitation if such limits are necessary to meet legitimate penological objectives,

such as rehabilitation and the maintenance of security and order. See Overton v. Bazzetta, 539 U.S. 126 (2003)(withdrawing visitation privileges for a period of time to effect prison discipline "is not a dramatic departure from accepted standards for conditions of confinement").  When a prison regulation or practice impinges on inmates' or free citizens' speech and association rights, "the regulation is valid if it is reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  The reasonableness standard is applied, using the four factors as set forth in Turner:

> (1) There must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.  Moreover, the governmental objective must be a legitimate and neutral one.
>
> (2) Whether there are alternative means of exercising the right that remain open to prison inmates.
>
> (3) The impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.
>
> (4) The absence of ready alternatives is evidence of the reasonableness of a prison regulation.  By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.  This is not a "least restrictive alternative" test.

Turner, 482 U.S. at 89-90  (citations omitted).

Here, Plaintiff alleges that the permanent ban on visitation by his mother is unconstitutional in violation of his First Amendment rights.  However, Plaintiff provides documentation that

plainly contradicts his allegations.  In a memo dated February 2, 2011, from Administrator Bartkowski to Plaintiff, Bartkowski addresses Plaintiff's request for restoration of visiting privileges with Plaintiff's mother.  Bartkowski stated the following reasons for upholding the visitation ban: (1) Plaintiff's mother was identified by the NJSP SID as the corporation registered agent of the fraudulent business; (2) Plaintiff's mother had declined to cooperate with the SID investigation after an initial interview and thus, SID could not evaluate the totality of her involvement in the unauthorized business; (3), (4) and (5) Plaintiff's visiting privileges were not suspended or terminated permanently under N.J.A.C. 10A:4-5.1(g)(7); rather, his mother's visitation privileges were suspended pursuant to N.J.A.C. 10A:18-6.3(c),[2] because it was determined that she posed a substantial risk to the safety and security of NJSP based on her actions in conjunction with Plaintiff as shown in the confidential SID report and the substantial documentary evidence provided; and (6) finally, the ban on visitation by Plaintiff's mother "does not impact on [Plaintiff's] ability to maintain community ties with her through

---

[2]   Section 10A:18-6.3(c) provides that "persons determined, by substantial evidence, to have a harmful influence upon the inmate or to constitute a threat to the security of the correctional facility shall be banned from visiting an inmate committed to the custody of the Department of Corrections for a minimum of 365 days and the visitor shall be required to apply in writing to the Administrator for approval/disapproval of the reinstatement of visit privileges."

letters and phone calls.  In addition, the loss of the
aforementioned visiting privileges does not affect the visiting
privileges for the remainder of [Plaintiff's] family and
community ties to include" Plaintiff's father, stepmother,
sister, two aunts, five cousins, and three friends.  Further,
Bartkowski advised Plaintiff that his mother could take the
following steps to have her visiting privileges restored, namely,
to reschedule an interview with the NJSP SID and cooperate in
their evaluation of her role in the unauthorized business, and to
thereafter reapply for reinstatement of visitation.  (Amended
Compl., Ex. J).

Based on these admitted facts, Plaintiff has not established
any of the four <u>Turner</u> factors, as set forth above, necessary to
show that the restriction on his mother's visitation was
unreasonable or unrelated to a legitimate penological interests.
<u>Turner</u>, 482 U.S. at 89.  Specifically, based on the February 2,
2011 Bartkowski memo, defendants have shown a "valid, rational
connection" between the visitation ban against Plaintiff's mother
and the security needs of the NJSP, given the evidence of her
involvement as a corporate officer in the unauthorized business
for which Plaintiff was disciplined.  Plaintiff also has
alternative means of maintaining his ties with his mother through
written correspondence and telephone calls.  Likewise, there are
no visitation restrictions with his other, numerous family
members and friends.  Additionally, there is no ready alternative

to the visitation restriction to address the NJSP's security concerns, as the restriction has a minimal impact on its staff and allocation of prison resources without unduly harming Plaintiff's ties with his mother.

Therefore, this Court finds no constitutional violation under these circumstances, and Plaintiff's First Amendment claim regarding visitation privileges will be dismissed with prejudice, as against all named defendants,  for failure to state a claim.

B.  Due Process Claims

The Due Process Clause of the Fifth and Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. Const. amend. XIV.  In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and

findings.  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994)(citing Wolff, 418 U.S. at 563-72).  However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, Plaintiff alleges that his right to due process under the Fourteenth Amendment was denied when defendant Maniscalco would not allow Plaintiff "ample time to spend with [his] Counsel Substitute Ian Burton and have ample time to go through the 200+ documents he requested to review."  Plaintiff also contends that he was denied his Fifth Amendment right to confront witnesses against him when Maniscalco would not allow Plaintiff to call his mother as a witness at his disciplinary hearing. Finally, Plaintiff claims that Maniscalco deprived Plaintiff of his due process rights by allowing Burton to sign the adjudication form without Plaintiff's knowledge and permission. (Amended Compl., Claim 2).

This Court finds no due process violations under Wolff on the facts as alleged by Plaintiff.  As to his first claim that he did not have ample time to review the documents before the hearing, the Court observes that these documents were Plaintiff's

own documents seized from his cell.  Consequently, he was familiar with their contents.  As to his claim that he could not call his mother as a witness, the Court finds no constitutional deprivation.  Plaintiff's mother was not a witness against him, thus there was no violation of the Fifth Amendment's confrontation clause.  Moreover, the testimony of Plaintiff's mother would have been cumulative if she did indeed intend to testify as Plaintiff did; namely, that the business was a non-profit organization.

Finally, there is no indication on the adjudication form that Plaintiff refused to sign it, or that he did not authorize Burton to sign it.  Burton was Plaintiff's Counsel Substitute, and his signature on the form merely acknowledges what took place at the disciplinary hearing, and was not an acquiescence of guilt.  Moreover, this allegation is not an enumerated due process requirement under Wolff.

Plaintiff also asserts a deprivation of due process claim against defendant Raphael Dolce, the SID investigator who reported and investigated the disciplinary charges.  Plaintiff alleges that Dolce violated his due process rights by not interviewing Plaintiff to obtain the facts of the case, and by verbally harassing Plaintiff's mother in an interview during the investigation.

The Court finds no due process violations based on these allegations against Dolce.  There is no requirement that

26

Plaintiff first be interviewed before his hearing.  He had the opportunity to challenge the disciplinary charges and refute any allegations at the hearing.  Further, the allegation that Dolce verbally harassed Plaintiff's mother in an interview such that her Fifth Amendment rights were violated is not a constitutional deprivation with regard to Plaintiff.  Therefore, Plaintiff's due process claims against Maniscalco and Dolce will be dismissed with prejudice for failure to state a claim.

Lastly, Plaintiff appears to be challenging the disciplinary finding itself by claiming that Maniscalco relied "solely on Investigator Dolce's opinion rather than the evidence itself and did not investigate the evidence, as he stated was complex, independently.  He did not meet the burden of proof to find guilty of fraud because he did not show first the intent, and second the action."  (Amended Compl., Claim 3).  The Court finds Plaintiff's purported claim for damages is subject to dismissal because Plaintiff is actually challenging the result of the disciplinary proceeding.

In a series of cases beginning with <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In <u>Preiser</u>, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to

compel restoration of the credits, which would have resulted in
their immediate release.  411 U.S. at 476.  The prisoners did not
seek compensatory damages for the loss of their credits.  411
U.S. at 494.  The Court held that "when a state prisoner is
challenging the very fact or duration of his physical
imprisonment, and the relief he seeks is a determination that he
is entitled to immediate release or a speedier release from that
imprisonment, his sole federal remedy is a writ of habeas
corpus." Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court
addressed a corollary question to that presented in Preiser,
*i.e.,* whether a prisoner could challenge the constitutionality of
his conviction in a suit for damages only under § 1983 (a form of
relief not available through a habeas corpus proceeding).  The
Court rejected § 1983 as a vehicle to challenge the lawfulness of
a criminal judgment.

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has not been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further
instructed district courts, in determining whether a complaint

28

states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction and sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."  Id. at 489-90.

Later, in Edwards v. Balisok, 510 U.S. 641 (1997), the Supreme Court applied the lessons of Preiser and Heck to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits.  The Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, which in that case was the disciplinary finding and punishment.  520 U.S. at 646-8.

29

Here, Plaintiff plainly is challenging the disciplinary finding itself, and thus, this claim is barred under <u>Heck</u> and <u>Balisok</u> because a favorable outcome in this case would necessarily imply the invalidity of his prison disciplinary finding.  Plaintiff's sole federal remedy in this instance would be a writ of habeas corpus.

To the extent that Plaintiff is challenging the result of the disciplinary proceedings, such claim must be dismissed. Plaintiff has not exhausted his administrative and state court remedies challenging the disciplinary finding.  In fact, Plaintiff admits that the matter is currently pending on appeal in state court.  Therefore, he is precluded at this time from asserting such a claim here.  Accordingly, Plaintiff's claim challenging the results of his disciplinary proceedings must be dismissed without prejudice at this time.

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety, as against defendants, NJDOC and NJSP, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  In addition, Plaintiff's First Amendment free religious exercise and visitation claims, his RLUIPA claim, and his Fourteenth Amendment denial of due process claim under <u>Wolff v. McDonnell</u>, <u>supra</u>, will be dismissed with prejudice as against all named defendants, for failure to state a claim.  Finally,

Plaintiff's due process claim challenging the results of his disciplinary hearing will be dismissed without prejudice for failure to state a claim at this time.  Plaintiff's application for appointment of counsel (Docket entry no. 2-3) will be denied as moot.  An appropriate order follows.


                                _/s/ JOEL A. PISANO_____
                                JOEL A. PISANO
                                United States District Judge

Dated: December 7, 2011

31